# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JANE DOE 1, et al.,

     Plaintiffs,

v.

PAM BONDI, in her official capacity
as Attorney General of the United
States, et al.,

     Defendants.

Civil Action No.
1:25-cv-01998-VMC

## ORDER

This matter is before the Court on Plaintiffs' Amended Motion for a
Temporary Restraining Order (TRO) against Defendants Pam Bondi, in her official
capacity as Attorney General of the United States, Kristi Noem, in her official
capacity as Secretary of the Department of Homeland Security ("DHS"), and Todd
Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs
Enforcement ("ICE"), (collectively, "Defendants"). (Doc. 19). Plaintiffs, who are
proceeding pseudonymously, request that this Court enter a TRO to: (1) enjoin
Defendants from terminating their F-1 student status under the Student and
Exchange Visitor (SEVIS) system, and (2) require Defendants to set aside their
SEVIS Registration termination determination, restore Plaintiffs F-1 nonimmigrant
student status, and restore Plaintiffs' Optional Practical Training (OPT) and

Curricular Practical Training (CPT) work authorizations. Upon careful consideration of the parties' submissions, and with the benefit of a hearing, the Court grants Plaintiffs' motion.

## I.   Background

Congress has authorized nonimmigrant F-1 visas for nonimmigrant students, such as Plaintiffs, who enroll in Government-approved academic institutions and engage in a full course of study. 8 U.S.C. § 1101(a)(15)(F)(i). Once admitted to the United States with an F-1 visa, an international student is granted permission to remain in the United States for the duration of status (noted as D/S on the relevant document) as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. 8 C.F.R. §§ 214.2(f)(6). Students who complete that course of study are entitled to apply for OPT, which if approved, enables them to remain for an additional year, or in cases of STEM degrees up to three years, working in their field of study.[1] 8 C.F.R. § 214.2(f)(10).

Congress required that DHS "develop and conduct a program to collect from approved institutions of higher education . . . in the United States [certain

_____

[1] Additionally, some degree programs also allow students to work in their field of study during their course of study under CPT.

information] with respect to aliens who have the status, or are applying for the status, of [F-1] nonimmigrants . . . ." 8 U.S.C. § 1372(a)(1)(A). As a result, the Department of Homeland Security's Student and Exchange Visitor Program (SEVP) created an online database known as SEVIS. SEVIS is a centralized database maintained by the SEVP and it is used to manage information on nonimmigrant students and exchange visitors to track their compliance with the terms of their status. Under 8 C.F.R. § 214.2(g)(2), Designated School Officials (DSOs) must report through SEVIS to the SEVP when a student fails to maintain status as described in the Code of Federal Regulations. SEVIS termination is governed by SEVP policies and regulations, which indicate that termination of SEVIS registration can be done in one of a few ways. 8 C.F.R. § 214.1(d). Students can fail to maintain status in violation of their status requirements outlined in 8 C.F.R. § 214.2(f). Additionally, 8 C.F.R. § 214.2(e)–(g) delineates the specific circumstances under which certain conduct by any nonimmigrant visa holder "constitutes a failure to maintain status," such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than one year.

A termination of status initiated by DHS is governed by 8 C.F.R. § 214.1(d), and permits DHS to terminate status when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent

residence is introduced in Congress; or (3) DHS published a notification in the Federal register identifying national security, diplomatic, or public safety reasons for termination.

Accordingly, the revocation of an F-1 visa does not constitute failure to maintain status pursuant to the relevant regulations and does not provide a basis to terminate F-1 student status under the SEVIS registration system.[2] Instead, if the visa is revoked, the student is permitted to continue to pursue her course of study in school, but upon departure from the United States, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 — VISA REVOCATION (Sept. 12, 2016). Put differently, F-1 student status and F-1 student visas are not one in the same. The F-1 student visa refers only to the document that nonimmigrant students receive to enter the United States, whereas F-1 student status refers to the students' formal immigration classification once they enter the country.

Here, Plaintiffs are all F-1 student visa holders actively enrolled in colleges and universities throughout the United States, or who have obtained lawful OPT to resume working under the terms of their lawful student status. (Doc. 15 ¶¶ 6,

---

[2] *See* ICE Policy Guidance 1004-04 — Visa Revocations (June 7, 2010) ("[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record.").

9–27). Between April 1, 2025 and April 14, 2025, Plaintiffs received notification from their schools' DSOs informing them that SEVP terminated their SEVIS record and marked Plaintiffs as either "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated" or, "Otherwise Failing to Maintain Status" with a narrative citing deportability provisions under 8 U.S.C. § 1227(a)(1)(C), for failure to maintain status, and 8 U.S.C. § 1227(a)(4)(C)(i), for foreign policy grounds. (Doc. 1 ¶ 2). However, Plaintiffs do not have any criminal history that would warrant their SEVIS records being terminated. Nonetheless, many of the emails from the schools direct Plaintiffs to leave the United States with little notice to prepare to do so.[3]

In some, but not all of these cases, the State Department has revoked the student's visa. But as the Court previously explained, the revocation of a visa does not necessarily impact the person's lawful presence in the country. As such, Plaintiffs allege that it is the SEVIS registration termination that has rendered them vulnerable to devastating immigration outcomes such as detention and deportation, as well as irreparable harm.

On April 11, 2025, seventeen Plaintiffs filed this action. (Doc. 1). Four days later, Plaintiffs amended their Complaint to add 116 Plaintiffs, bringing the total

---

[3] For example, in the email directed to Plaintiff John Doe 49, he was informed that he must depart the United States within 15 days. (Doc. 77 at 32).

number of Plaintiffs to 133. (Doc. 11). In their four-count Complaint, Plaintiffs seek declaratory and injunctive relief that Defendants violated the Administrative Procedure Act ("APA") when they terminated their records on improper grounds, without prior notice, without an articulated basis for their decision, and without providing Plaintiffs an opportunity to respond. (*Id.* ¶¶ 180-182). Plaintiffs contend that Defendants acted in an arbitrary and capricious manner, inconsistent with the intent and plain language of the Immigration & Nationality Act and its associated regulations, as well as in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (*Id.* ¶¶ 183-195). The original 17 Plaintiffs moved for a TRO to temporarily enjoin Defendants from terminating their student status in the SEVIS system and to require Defendants to set aside their termination decisions. (Doc. 4).

On April 14, 2025, the Court scheduled an in-person hearing for Thursday, April 17, 2025 at 9:30 a.m. to address whether to issue a temporary restraining order. (*See* Doc. 9). The Court also ordered that Plaintiffs provide notice to Defendants, as well as supplemental briefing addressing the Court's jurisdiction over nonresident Plaintiffs.[4] (*Id.*). Further, Defendants were given until April 16,

---

[4] Defendants oppose the Court's jurisdiction over the nonresident Plaintiffs and were ordered to file their response in opposition by midnight on April 18, 2025. Nevertheless, given the emergency nature of a TRO, as well as its limited duration, the Court finds it more prudent to issue relief as to all Plaintiffs. If Defendants'

2025 at 5:00 p.m. to respond to Plaintiffs' request for a temporary restraining order. (*Id.*). At the end of the hearing, the Court ordered Plaintiffs to amend their TRO to include all of the Plaintiffs and the Parties agreed that an additional hearing on the amended TRO was unnecessary. Plaintiffs have amended their TRO and therefore this matter is ripe for consideration as to all Plaintiffs. (Doc. 19).

## II.    Discussion

The standard for obtaining a TRO is identical to that of obtaining a preliminary injunction. *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1332 (N.D. Ga. 2018) (citing *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010)). To obtain a TRO or preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the damage to the opposing party; and (4) granting the injunction would not be adverse to the public interest. *Id.* (citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003)). The balance-of-the-harms and public interest elements merge when the government is the party opposing the injunctive relief. *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020).

---

response convinces the Court that it does not have jurisdiction over certain Plaintiffs, the Court will dissolve the TRO as to them.

A.    **Plaintiffs Have Met the Factors for Issuance of a TRO**

1. **Plaintiffs' Likelihood of Success on the Merits**

The Eleventh Circuit instructs district courts to consider the question of whether a plaintiff has a substantial likelihood of success on the merits as "generally the most important" factor in the analysis. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Id.* Plaintiffs claim that Defendants' termination of their F-1 student status under the SEVIS system was unlawful for multiple reasons. First, it constitutes agency action not in accordance with law and in excess of statutory authority under the Administrative Procedure Act (Count 1); second, it violates the Due Process Clause of the Fifth Amendment to the Constitution (Count 2); third, it violates the APA by infringing upon constitutional rights protected by the Fifth Amendment (Count 3); and fourth, it is arbitrary and capricious under administrative law (Count 4). (*See* Doc. 19-1 at 67).

The Court finds that based on the allegations in the Amended Complaint and the specific facts in the Plaintiffs' 133 declarations, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim in Counts 1 and 4: that Defendants' termination of the SEVIS registration exceeds the bounds of statutory and regulatory authority and is therefore unlawful under 5

U.S.C. § 706(2)(A), (C), and (D). Termination of the SEVIS registration constitutes a final decision reviewable under the APA.[5] *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").[6] And, pursuant to the record currently before the Court at this time, the Court concludes that Plaintiffs are likely to show that DHS's authority to terminate F-1 student status is narrowly circumscribed by regulation. *See* 8 C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d at 185 n.100 (explaining that the ability to terminate F-1 status is limited by § 214.1(d) which states: "Within the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons."). Since none of those conditions are applicable here, Plaintiffs are likely to show that Defendants' termination of their F-1 status was not in compliance

---

[5] Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

[6] Plaintiffs' evidence showed that Plaintiffs' schools and/or employers took adverse action against Plaintiffs, further demonstrating that the termination of the SEVIS records is a final agency action from which rights and liabilities occur.

with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

In their opposition, Defendants argue that although the APA generally waives the government's immunity, that waiver is not applicable here. (Doc. 16 at 6). Specifically, Defendants point to APA section 702, which "preserves other limitations on judicial review and does not confer authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is sought." (Doc. 16 at 6–7 (citing *Cohen v. United States*, 650 F.3d 717, 724–25 (D.C. Cir. 2011))). Although Plaintiffs have not asserted a claim under the Privacy Act, Defendants contend that Plaintiffs' claims "clearly" implicate the Privacy Act, and that the Privacy Act provides an alternative, adequate remedy to the APA. (*Id.*). However, courts have held that the "availability of a Privacy Act suit . . . does not take [the] case[] outside the scope of the waiver of sovereign immunity in § 702 of the APA and does not affect this Court's subject-matter jurisdiction over Plaintiffs' APA claims. *All. for Retired Ams. v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025).

Moreover, Plaintiffs do not have the ability to seek relief under the Privacy Act. (*Id.*). The Privacy Act provides that an "individual" is "a citizen of the United States or an alien lawfully admitted for permanent residence." (*Id.* at 8 (citing 5

U.S.C. § 552a(a)(2))), but Plaintiffs are neither U.S. citizens nor lawful permanent residents, and therefore fall outside of the purview of the Privacy Act.

Further, the relief available under the Privacy Act is actual damages. *Williams v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-61124, 2023 WL 8079947, at *6 (S.D. Fla. Nov. 21, 2023) (quoting *Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022)); *FAA v. Cooper*, 566 U.S. 284, 298 (2012). Plaintiffs' Complaint seeks only declaratory and injunctive relief. (Doc. 11 at 67–68). As such, Defendants' argument fails.

## 2. Substantial Threat of Irreparable Injury

Plaintiffs must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is "harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." *Canon, Inc. v. GCC Int'l, Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008).

Given the number of Plaintiffs, the Court will not include a description of each harm described by Plaintiffs in the Amended Complaint and the declarations accompanying the Amended TRO Motion. (*See* Docs. 11, 19). Nonetheless, Plaintiffs have demonstrated that they face irreparable harm in the absence of temporary relief. Plaintiffs declare that as a result of the SEVIS terminations, they will lose scholarships, career opportunities, access to education, and the ability to apply for OPT. (*See* Doc. 4-2). Plaintiffs fear that they will abruptly have to leave

behind family, cancel marriage plans, and abandon their communities in order to avoid detention or being labeled a national security or foreign policy threat. Many Plaintiffs are mere weeks away from attaining their degrees. (Doc. 4-2 at 34, 40). The loss of timely academic progress alone is sufficient to establish irreparable harm. Additionally, all Plaintiffs report high levels of stress and anxiety resulting from the uncertainty around their futures. If Plaintiffs cannot work or study, they cannot remain in the United States legally and will therefore be subjected to removal proceedings or forced to return to their native countries on their own. These harms could not be sufficiently compensated with monetary damages or avoided by a later decision on the merits. *See Liu v. Noem*, No. 25-cv-133-SE-TSM, slip op. at 3 (D.N.H. Apr. 10, 2025), ECF No. 13 (granting a motion for a temporary restraining order on an APA claim based on the termination of an F-1 international student's record in SEVIS); *Isserdani, et al. v. Noem*, No. 25-cv-00283-WMC, 2025 WL 118626, at *10 (W.D. Wis. Apr. 15, 2025) (same); *John Roe, et al v. Noem, et al.*, No. 25-cv-00040-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) (same); *Rantsantiboom v. Noem, et al.*, No. 25-cv-01315 (D. Minn. Apr. 15, 2025) (same); *Hinge v. Lyons*, No. 1:25-cv-01097-RBW, slip op. at 12 (D.D.C. Apr. 15, 2025), ECF No. 11 (same).

### 3.  Balance of Harms and Public Interest

The third and fourth TRO requirements—that the threatened injury to the movant outweighs any harm to the non-movant and that an injunction is not adverse to the public interest—merge when, as here, the government is the party opposing the motion. *Koe v. Noggle*, 688 F. Supp. 3d 1321, 1358 (N.D. Ga. 2023) (citing *Swain*, 958 F.3d at 1091). "The third element" of that analysis "looks to the competing claims of injury, requiring the court to consider the effect on each party of the granting or the withholding of the requested relief." *De La Fuente v. Merrill*, 214 F. Supp. 3d 1241, 1249 (M.D. Ala. 2016) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008)) (internal quotations omitted).

For the reasons set forth above, Plaintiffs have satisfied both factors. First, the balance of harms weighs in Plaintiffs' favor. Plaintiffs stand to lose their lawful status, access to education, and future career prospects. By contrast, the temporary nature of the requested relief poses minimal harm to Defendants. Defendants assert that SEVIS does not control or even necessarily reflect whether a student has lawful nonimmigrant status. (Doc. 16 at 2). If that is so, then restoring Plaintiffs to the status quo before their SEVIS records were terminated has no effect on the Executive's "control over immigration," Defendants' only stated harm. (*Id.* at 16 (citing *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review*, 959 F.2d 742 (9th Cir. 1992)). Considering the record evidence as discussed in the previous sections

of this order, the Court determines that the imminent risk of irreparable harm to Plaintiffs flowing from the termination of their SEVIS records outweigh any harm the government will experience from the TRO.

Lastly, the Court concludes that there is substantial public interest in ensuring government agencies abide by federal laws. *See Kansas v. U.S. Dep't of Labor*, 749 F. Supp. 3d 1363, 1380 (S.D. Ga. Aug. 26, 2024) (citing *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)); *see also Florida v. Dep't of Health and Hum. Servs.*, 19 F.4th 1271, 1315 (11th Cir. 2021) (Lagoa, J., dissenting) ("[T]here is no public interest in the perpetuation of unlawful agency action. To the contrary, there is substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Accordingly, the Court concludes that all relevant factors favor Plaintiffs.

### 4. Security

Finally, the Court exercises its discretion to waive the bond requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure at this time. *BellSouth Telecomms. Inc. v. MCImetro Access Transmission Servs., LLC*, 435 F.3d 964, 971 (11th Cir. 2005); *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1359–61 (N.D. Ga. 2022).

### III.    Conclusion

Based on the foregoing, it is **ORDERED** that:

1. Plaintiffs' Motion for Temporary Restraining Order and Amended Motion for Temporary Restraining Order (Docs. 4, 19) are **GRANTED**.

2. The Parties are **DIRECTED** to file a proposed joint protective order regarding the use of Plaintiffs' identifying information by 3:00 p.m. on Monday, April 21, 2025.

3. In the meantime, the Court **ORDERS** the Defendants not to disclose the Plaintiffs' identifying information and not to use it for any purpose outside of this litigation. This aspect of the Court's Order expires at 5:00 p.m. on Monday, April 21, 2025.

4. Defendants shall reinstate Plaintiffs' student status and SEVIS authorization, retroactive to March 31, 2025. By Tuesday, April 22, 2025 at 5:00 p.m., Defendants shall file a notice of compliance with this Order.

5. This Order takes effect immediately and shall continue until its expiration in fourteen (14) days.

**SO ORDERED** this 18th day of April, 2025.

Victoria Marie Calvert
United States District Judge