**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| PRASANNA ORUGANTI, | : |
| | : |
| Plaintiff, | : **Case No. 2:25-cv-00409-ALM-EPD** |
| | : |
| v. | : **Judge Algenon L. Marbley** |
| | : |
| KRISTI NOEM, in her official capacity as | : **Magistrate Judge Elizabeth Preston Deavers** |
| as Secretary of Homeland Security; | : |
| the DEPARTMENT OF HOMELAND | : |
| SECURITY; and TODD LYONS, in his | : |
| official capacity as Acting Director of U.S. | : |
| Immigration and Customs Enforcement, | : |
| | : |
| Defendants. | : |

## OPINION AND ORDER

This matter comes before this Court on Plaintiff Prasanna Oruganti's Motion for a Temporary Restraining Order ("TRO") against Defendants Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security ("DHS"), DHS, and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Defendants"). A conference on Plaintiff's Motion for a TRO pursuant to S.D. Ohio Civ. R. 65.1 was held on Thursday, April 17, 2025. For the reasons set forth below, this Court **GRANTS** Plaintiff's Motion for a TRO (ECF No. 2).

## I. BACKGROUND

Plaintiff Prasanna Oruganti, a citizen of India, is an international student pursuing a Ph.D. in agricultural engineering at The Ohio State University ("OSU") in Columbus, Ohio. (ECF No. 2-1 ¶¶ 2, 11). Ms. Oruganti first entered the United States in 2018 upon obtaining an F-1 visa while she was in India. (*Id.* ¶¶ 4–5). An F-1 visa provides foreign national students valid immigration status for the duration of a full course of study at an approved academic institution in the United

States.  *See* 8 U.S.C. S 1101(a)(15)(F)(i).  Plaintiff's Form I-20, officially known as the "Certificate of Eligibility for Nonimmigrant Student Status," states that she is authorized until December of 2029 to complete her Ph.D. program at OSU.  (*See* ECF No. 2-3).

Ms. Oruganti is one of hundreds, if not more, of students nationwide whose record and F-1 status in the Student and Exchange Visitor Information Systems (SEVIS) database[1] was abruptly terminated by ICE the week of April 7, 2025.  (ECF No. 1-1).  Specifically, on April 8, 2025, Ms. Oruganti received an email from OSU's Office of International Affairs notifying her that her SEVIS record had been terminated, and that the reason given for the termination was "Other - Individual identified in criminal records check and/or has their VISA revoked."  (ECF No. 2-2).  The email further stated: "Since your SEVIS record has been terminated by [the Student and Exchange Visitor Program], this indicates the U.S. government believes you have violated your F-1 status."  (*Id.*).

Ms. Oruganti, however, has not received any communication from the U.S. Department of State that her F-1 visa was officially revoked.  She maintains that she is unaware of the factual basis for the termination of her SEVIS status, noting that her only criminal history is a June 2020 conviction for a defective equipment charge in Missouri.  (ECF No. 2-1 ¶ 18).  She explains that, at the time, she was trying to turn left from the front side of a store when she "misjudged the distance while turning," resulting in the front side of her car hitting some decorative bricks.  (*Id.*).  Shortly after the incident, Ms. Oruganti was instructed to appear in court and pleaded guilty to a defective equipment charge under Mo. Ann. Stat. § 307.170, paying a $300 fine.  (*Id.*; ECF No. 2-5).  The offense to which she pled guilty was a minor misdemeanor.  "The public prosecutor

---

[1] SEVIS is an electronic system maintained by DHS that tracks and monitors schools, Student Exchange Visitor Programs ("SEVP"), and F-1 students who have come to the United States to participate in the education system here.  F-1 visa holders have no access to or visibility into the system.  The SEVIS system shows whether a student, like Plaintiff here, is in compliance with her F-1 status.

clarified that it was a minor traffic violation and assured [her] that no points would be deducted from [her] driver's license." (ECF No. 2-1 ¶ 18).

On April 17, 2025, Plaintiff filed this action under the Administrative Procedure Act (APA), the Fifth Amendment to the U.S. Constitution, and the Declaratory Judgment Act, to challenge the termination of her SEVIS record. (ECF No. 1). Specifically, Ms. Oruganti alleges that Defendants' termination of her record in the SEVIS system—and thus termination of her F-1 status—is arbitrary and capricious under the APA, 5 U.S.C. § 706, and lacks the procedural safeguards required by both the APA and the Fifth Amendment. To be clear, Plaintiff challenges only Defendants' termination of her F-1 student status in the SEVIS system, *not* the revocation of her F-1 visa, which does not appear to have happened. (*See* ECF No. 1 ¶ 7 ("Plaintiff does not challenge the revocation of her visa in this action. Rather, Plaintiff brings this action . . . to challenge ICE's illegal termination of her SEVIS record."); ECF No. 2 at 1–2 (seeking a TRO that, among other things, enjoins Defendants from "causing Ms. Oruganti's visa to be revoked"); ECF No. 2 at 4 ("Plaintiff does *not* challenge the revocation of any visa in this case. Instead, Plaintiff brings this lawsuit to challenge Defendants' unlawful termination of her F-1 student *status* in the SEVIS system.")).

Ms. Oruganti simultaneously moved for a TRO that: (1) requires Defendants to restore Plaintiff's SEVIS record and F-1 status so that she can continue attending school and working as a graduate research associate; and (2) enjoins Defendants from "directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including causing Ms. Oruganti's visa to be revoked or detaining or removing Ms. Oruganti—as a result of th[e] decision" to terminate her SEVIS record and F-1 status. (*See* ECF No. 2 at 1–2; ECF No. 1

at 16). On April 17, 2025, the parties appeared before this Court for a Rule 65.1 conference, and this Court issued a TRO. This Opinion and Order supplements that oral ruling.

## II.     STANDARD OF REVIEW

A TRO is an emergency measure meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1021 (S.D. Ohio 2020) (quoting *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979)). Federal Rule of Civil Procedure 65(b) requires a Court to examine on application for a TRO, whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A).

Given that the "the purpose of a temporary restraining order is to maintain the status quo," it is of paramount importance that the party seeking the TRO establish immediacy and irreparability of injury. *See Doe v. Univ. of Cincinnati*, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) (citing *Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977)). The "status quo," for purposes of injunctive relief, is "the last actual, peaceable, noncontested status which preceded the pending controversy." *See Sunbeam Corp. v. Econ. Distrib. Co.*, 131 F. Supp. 791, 793 (E.D. Mich. 1955); *Lapeer Cnty. Med. Care Facility v. State of Mich. Through Dep't of Soc. Servs.*, 765 F. Supp. 1291, 1300 (W.D. Mich. 1991) ("When the status quo causes continuing irreparable harm to plaintiffs, the status quo is the 'last uncontested status which preceded the

pending controversy.'" (quoting *Crowley v. Local No. 82, Furniture & Piano Moving*, 679 F.2d 978, 995 (1st Cir. 1982)).[2]

While immediacy and irreparability of harm are threshold considerations, the Sixth Circuit has explained that courts may also consider the traditional preliminary injunction factors: "whether the movant has a strong likelihood of success on the merits; . . . . whether issuance of the injunction would cause substantial harm to others; and . . . whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc).

On an application for a TRO, a court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." *Elrod v. Burns*, 427 U.S. 347, 350, n.1 (1976); *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014). The court may also rely on otherwise inadmissible evidence, including hearsay, "if the evidence is appropriate given the character and objectives of the preliminary injunctive proceeding." *Doe #11 v. Lee*, 609 F. Supp. 3d 578, 592 (M.D. Tenn. 2022). The "burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one," since the party seeking "the injunction must establish its case by clear and convincing evidence.'" *Id.* (citing *Overstreet v. Lexington-Fayette*

---

[2] As a number of federal courts of appeal have recognized, "it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions, but such an injunction restores, rather than disturbs, the status quo *ante*." *See League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (cleaned up) (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012)); *see also O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (en banc) (per curiam) ("requir[ing] a party who has recently disturbed the status quo to reverse its actions . . . restores, rather than disturbs, the status quo ante, and is thus not an exception" to the ordinary standard for preliminary injunctions); *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983) (referring to reinstatement of benefits as "restoration of the *status quo ante*").

*Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Honeywell, Inc. v. Brewer-Garrett Co.*, 145 F.3d 1331 (6th Cir. 1998)).

## III.    LAW & ANALYSIS

### A.  Immediacy and Irreparability of Harm

This Court first considers the immediacy and irreparability of harm that Plaintiff faces absent injunctive relief.  Fed. R. Civ. P. 65(b)(1)(A).  To establish irreparable harm, Plaintiff must show that she will suffer "actual and imminent" harm, "rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).  Further, the harm must be irreparable, meaning that it "cannot be prevented or fully rectified by [a] final judgment after trial[.]" *Tennessee v. Nat'l Collegiate Athletic Ass'n*, 718 F. Supp. 3d 756, 764 (E.D. Tenn. 2024) (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)).  Generally, irreparable harm is harm that cannot be remedied by money damages.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007).  But economic damages may constitute irreparable harm if such damages "cannot be prevented or fully rectified by [a] final judgment after trial[.]" *Nat'l Collegiate Athletic Ass'n*, 718 F. Supp. 3d at 764 (quoting *Roland Mach. Co.*, 749 F.2d at 386)).

Ms. Oruganti argues that she will suffer irreparable and immediate injury absent a TRO because, first and most alarmingly, she faces possible detention and removal from the country for being out of status.  *See* 8 U.S.C. § 1227(a)(1)(C)(i) ("Any alien who was admitted as a [F-1] nonimmigrant and who has failed to maintain the [F-1] nonimmigrant status in which the alien was admitted . . . or to comply with the conditions of any such status, is deportable.").  At the Rule 65.1 conference, Defendants argued that terminating a SEVIS record is distinct from revoking an F-1 status, and that OSU likely misinterpreted the significance of the SEVIS record termination.  But

DHS's own website makes clear that "[w]hen an F-1 . . . SEVIS record is terminated, the following happens":

- "Student loses all on- and/or off-campus employment authorization."

- "Student cannot re-enter the United States on the terminated SEVIS record."

- "Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student."[3]

Defendants ultimately conceded, as they must, that termination of the SEVIS record could lead to the revocation of the F-1 status, which could ultimately lead to deportation—an outcome that the Supreme Court has recognized as "a drastic measure, often amounting to lifelong banishment or exile." *Sessions v. Dimaya*, 584 U.S. 148, 157 (2018) (internal quotation marks omitted). Given the significant time and money Plaintiff has already invested in her agricultural engineering education and career trajectory (ECF No. 2-1 ¶ 12), Plaintiff persuasively argues that the termination of her student status and SEVIS record, and any subsequent deportation, will result "in the loss 'of all that makes [her] life worth living.'" *Bridges v. Wixon*, 326 U.S. 135, 147 (1945) ("[D]eportation may result in the loss 'of all that makes life worth living'.").

Plaintiff further explains that, as a result of the SEVIS termination, she is no longer authorized to engage in on-campus employment or to receive her monthly Ph.D. stipend, which make up Plaintiff's only source of income. This is so because, as an F-1 visa holder, Plaintiff

---

[3] *See Effects of SEVIS Termination*, U.S. Dep't of Homeland Security, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student. This Court may take judicial notice of information contained on federal government websites. *See Broom v. Shoop*, 963 F.3d 500, 509 (6th Cir. 2020).

generally cannot work off-campus.[4]  She has signed a lease for this year and next year too, which she maintains she will not be able to pay without work authorization.  Although this harm is economic in nature, it is irreparable because money damages are likely not available when this litigation concludes.  *See* 5 U.S.C. § 702; *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) ("The APA generally waives the Federal Government's immunity from a suit 'seeking relief *other than money damages* . . . .'" (emphasis added) (quoting 5 U.S.C § 702)); *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 479 (6th Cir. 2004) ("The APA's waiver of sovereign immunity applies to 'an action in a court of the United States seeking relief *other than money damages*.'" (emphasis added) (quoting 5 U.S.C § 702)); *Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 115–16 (D.D.C. 2022) (explaining that unavailability of money damages for APA claims counsels in favor of a finding of irreparable harm).

Beyond the monetary harm, Plaintiff's on-campus employment in the Department of Food, Agriculture and Biomedical Engineering forms an integral part of her doctoral training, the loss of which has already interrupted her academic plans and the research projects on which she is working.  At the Rule 65.1 conference, Ms. Oruganti also noted that OSU had instructed her to hold off on taking her exams, presumably to ensure that OSU is in compliance with federal law. Plaintiff also contends that the SEVIS termination will result in Plaintiff accruing unlawful presence daily, which may render her ineligible for reinstatement of her F-1 student status in the future.  *See Fang v. Dir.*, *U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 176 (3d Cir. 2019) (noting that F-1 student status may be reinstated if, among other things, the student has *not* been out of a

---

[4] *See Students and Employment,* U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/students-and-employment.

valid F-1 student status for over five months). Being out of status also renders Plaintiff ineligible to apply for any type of nonimmigrant visa while she is here; she would have to go back to India first. And if she takes this route of "self-deporting," she would be barred for five (5) years from returning to the U.S. because a ground of inadmissibility would attach to her based on an F-1 status violation. *See* 8 U.S.C. 1182(a)(6)(G) ("An alien who obtains the status of a [F-1] nonimmigrant . . . and who violates a term or condition of such status . . . of this title is inadmissible until the alien has been outside the United States for a continuous period of 5 years after the date of the violation.").

Opposing the TRO, Defendants at the hearing alluded to a vague administrative process that Plaintiff could have pursued to restore her SEVIS record, including by contacting ICE directly. But in this Court's view, that would amount to letting the proverbial fox guard the chicken house. The record is replete with instances of international students subject to visa revocations or SEVIS terminations being arrested and detained by ICE without warning. *See e.g.*, *Ozturk v. Trump*, ___ F.Supp.3d ___, ___, 2025 WL 1009445, at *1 (D. Mass. Apr. 4, 2025) ("[O]n March 25, 2025, at approximately 5:25 p.m. without prior notice of the revocation of her student visa or the grounds asserted for same, . . . a [Turkish] graduate student . . . at Tufts University, was approached and surrounded by six officers (several wearing masks and/or hoods), stripped of her cellphone and backpack, handcuffed, and taken into custody in an unmarked vehicle."); *see also* ECF No. 2-9, Kate Selig & Halina Bennet, *The Trump Administration Revoked 800 Student Visas. Here is What To Know*, N.Y. Times (Apr. 11, 2025), https://www.nytimes.com/2025/03/27/us/students-trump-ice-detention.html.

To summarize, the loss of Plaintiff's F-1 status places her education, research, financial stability, and career trajectories at imminent risk of irreparable harm, and puts her at risk of

detention or deportation.  At least four district courts have issued TROs in similar cases, finding that students on F-1 visas whose SEVIS status or record had been terminated by DHS or ICE face irreparable harm.  *See Liu v. Noem, et al.*, No. 1:25-cv-00133-SE-TSM, at *3–4 (D.N.H. April 10, 2025) (slip op.) (finding that doctoral student at Dartmouth College established irreparable harm where, "[b]ecause DHS terminated Liu's F-1 student status in the SEVIS system, he is no longer authorized to work as a research assistant or participate in any research, and he is no longer eligible to receive any stipend from his Ph.D. program at Dartmouth College"; "due to his inability to participate in research, Dartmouth must require him to disenroll from his current courses so that Dartmouth can remain in compliance with federal law"; "[t]hese circumstances will derail Liu's academic trajectory and ability to complete his Ph.D. program in a timely fashion"; and "the change in Liu's status in the SEVIS system may expose him to a risk of detention or deportation"); *Roe, et al., v. Noem, et al.*, No. CV 25-40-BU-DLC, 2025 WL 1114694, at *3–4 (D. Mont. Apr. 15, 2025) (finding that F-1 students "have successfully shown that, absent the relief provided for by a TRO, they will suffer irreparable harm," because "[l]osing F-1 status places Plaintiffs' education, research, financial stability, and career trajectories at imminent risk of irreparable harm," and "Plaintiffs also face the risk of immediate detention or removal from the United States"); *Isserdasani, et al., v. Noem, et al.*, No. 25-cv-283-wmc, at *10 (W.D. Wis. April 15, 2025) (slip op.) ("Isserdasani faces possible devastating irreparable harm due to the termination of his F-1 student record in SEVIS . . . . Given the amount of Isserdasani's educational expenses and potential losses from having to leave the United States without obtaining his degree, the court concludes that Isserdasani credibly demonstrates that he faces irreparable harm for which he has no adequate remedy at law in the absence of injunctive relief."); *Ratsantiboon v. Noem, et al.*, No. 25-CV-01315 (JMB/JFD), 2025 WL 1118645  (D. Minn. Apr. 15, 2025) ("The termination of

Ratsantiboon's F-1 student status in the SEVIS system renders him immediately ineligible to attend classes and sit for his final examinations. Ratsantiboon thus faces the imminent prospect of losing credit for the coursework he has thus far performed . . . . In addition, the termination of [his] SEVIS record forces him to live in uncertain legal status while he pursues this matter . . . which can constitute a separate irreparable harm.").

Accordingly, this Court finds that Plaintiff has shown that, without a TRO, she will suffer immediate, irreparable harm for which an award of monetary damages would not be sufficient.

## B. Other Factors

Although the immediacy and irreparability of harm are the most important at this juncture, this Court briefly addresses the other traditional preliminary injunction factors, as the Sixth Circuit has opined approvingly that those factors can be considered at the TRO stage. *See Stein v. Thomas*, 672 F. App'x 565, 569 (6th Cir. 2016). As to Plaintiff's likelihood of success on the merits, this Court finds Plaintiff is likely to succeed on her APA claims.[5] Federal regulations provide that "the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register,

---

[5] Because there is likelihood of success on the merits of one or more of Plaintiff's APA claims, this Court "need not consider in detail the merits of each and every claim." *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, & Kentucky, Inc. v. Cameron*, 599 F. Supp. 3d 497, 507 (W.D. Ky. 2022); *see Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005) ("Plaintiffs have asserted five constitutional and statutory claims. To obtain temporary injunctive relief, they must show a substantial likelihood of success on at least one claim. "); *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) ("Plaintiff need not demonstrate a likelihood of success on the merits of every claim—rather, they need only 'show a likelihood of success on the merits of at least one of [their] claims.'"); *see also Liu*, No. 1:25-cv-00133-SE-TSM, at *3 n.2 ("Because the court finds that Liu has shown a likelihood of success on the merits of his APA claim in Count 2, it does not address at this time his claim in Count 1 that DHS violated his due process rights under the Fifth Amendment when it terminated his F-1 status in the SEVIS system."); *Roe*, 2025 WL 1114694, at *6 ("Because Plaintiffs are likely to succeed on their APA cause of action, the issue of due process need not be addressed at this time.").

on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d). Defendants have not argued that any of these mechanisms were employed here. *See Fang*, 935 F.3d at 185 n.100 ("[I]t is easy to see why the students desire review—DHS appears to have terminated their F-1 visas without the statutory authority to do so. As discussed above, the ability to terminate an F-1 visa is limited by § 214.1(d).").   And "[w]hile the scope of review under the 'arbitrary and capricious' standard [under the APA] is narrow and a court is not to substitute its judgment for that of the agency, the agency nevertheless must examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983); *Securities & Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("The orderly function of the process of review requires that the grounds upon which the administrative agency acted are clearly disclosed and adequately sustained."); *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 476 (6th Cir. 2004) ("[D]eferential judicial review under the APA does not relieve the agency of its obligation to develop an evidentiary basis for its findings. To the contrary, the APA reinforces this obligation.").

Based on the record before this Court, Plaintiff has shown a likelihood to succeed on the merits of her claim that Defendants' termination of her SEVIS record and F-1 student status was not in compliance with the applicable statutory regulations and was therefore arbitrary, capricious, an abuse of discretion, not in accordance with the law, or otherwise without observance of procedure required by law. *See* 5 U.S.C. § 706(2).   Other courts have held the same in cases involving similar facts. *See Liu,* No. 1:25-cv-00133-SE-TSM, at *3 (finding that F-1 student plaintiff is likely to succeed on APA claim and issuing TRO); *Roe*, 2025 WL 1114694, at *3 (same); *Ratsantiboon,* 2025 WL 1118645 (same), *Isserdasani*, No. 25-cv-283-wmc, at *10 (same).

12

The last two factors in the balancing test—balance of hardships and public interest—merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, there is a substantial public interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994); *see also N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("The public interest is served when administrative agencies comply with their obligations under the APA.").

## C. Bond

Rule 65 of the Federal Rules of Civil Procedure states in relevant part: "The court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The purpose of the rule is to "protect[] the enjoined party from any pecuniary injury that may accrue [while] a wrongfully issued equitable order remains in effect." *Brown v. City of Upper Arlington*, 637 F.3d 668, 674 (6th Cir. 2011) (internal quotation marks and citations omitted). The district court possesses discretion over the posting of security under Rule 65(c), *Moltan Co. v. Eagle–Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995), and the amount ordinarily depends on the gravity of the potential harm to the enjoined party. *See Bookfriends, Inc. v. Taft*, 223 F. Supp. 2d 932, 953 (S.D. Ohio 2002) (waiving bond requirement where "Defendants will not suffer [] damages[] if it is ultimately determined that they were wrongfully restrained from enforcement of the legislation at issue").

For good cause shown, Plaintiff shall post a bond with the Clerk of the Court in the nominal amount of $1.00. *See Moltan Co.*, 55 F.3d at 1176 (finding no bond is required when strong public interest is involved); *see also Doe v. Univ. of Cincinnati*, 223 F. Supp. 3d 704, 713 (S.D. Ohio 2016) (setting Rule 65 bond in the nominal amount of $1), *aff'd*, 872 F.3d 393 (6th Cir. 2017).

13

## IV. CONCLUSION

For the reasons set forth above, and to maintain the status quo pending the preliminary injunction hearing, this Court **GRANTS** Plaintiff's Motion for a TRO (ECF No. 2) and issues the following interim relief**:**

1.   Defendants Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security; the U.S. Department of Homeland Security; and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement (collectively, "Defendants") are **ORDERED** to reinstate Plaintiff Prasanna Oruganti's F-1 student status and record in the Student and Exchange Visitor System ("SEVIS");[6] and

2.   Defendants are **ENJOINED** from enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of terminating Plaintiff's F-1 student status or SEVIS record, including revoking her F-1 visa, detaining her, or placing her in removal proceedings.

Plaintiff shall post a bond with the Clerk of the Court in the nominal amount of $1.00. The parties are further ordered to appear before this Court for a preliminary injunction hearing on **May 8, 2025, at 9:30 a.m.**  An appendix outlining the expedited briefing schedule and procedures to be followed at the Preliminary Injunction hearing follows this Order.

**IT IS SO ORDERED.**

**DATED:  April 18, 2025**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

---

[6] At the Rule 65.1 conference, this Court also ordered Defendants to pay Plaintiff for the time that she missed as a graduate research associate through no fault of her own.  Upon reflection and a close review of the applicable statutory framework, this Court *sua sponte* reconsiders that earlier ruling and vacates it. The parties are free to brief this particular issue in their papers, and this Court will take up the issue at the preliminary injunction stage if they do so.

**BRIEFING SCHEDULE & PRELIMINARY INJUNCTION HEARING**

Consistent with this Court's order at the Rule 65.1 conference, the parties will observe the following briefing schedule. The parties are to submit simultaneous opening and responsive briefs, addressing specifically why Plaintiff does or does not satisfy the following four requirements for the issuance of a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *See Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 590-91 (6th Cir. 2012). Opening briefs are due on **April 25, 2025**. Responsive briefs are due on **May 1, 2025**.

Plaintiff will pay her nominal bond of $1.00 to the Clerk of Court by **April 21, 2025, at 4:00 p.m.**

The Preliminary Injunction hearing will be held on **Thursday, May 8, 2025 at 9:30 a.m.** before the Honorable Algenon L. Marbley, United States District Court, 85 Marconi Boulevard, Columbus, Ohio, Court Room 1, Third Floor. If the hearing is not complete in one day, the hearing will resume on **Friday, May 9, 2025, at 8:30 a.m.** The Court will not continue the hearing date(s) except upon written motion supported by an affidavit demonstrating exceptional circumstances, made immediately upon the party's or counsel's receipt of notice of the existence of the exceptional circumstances.

The Court expects the evidence presented at the Preliminary Injunction hearing to be focused solely on the four-prong test for preliminary injunctions.

The parties shall engage in expedited discovery and agree upon an expedited discovery schedule that includes provisions for expert discovery.

15

The Court shall handle all discovery disputes for the purposes of the Preliminary Injunction.

The parties, or a party, in its opening Preliminary Injunction brief, may move to consolidate the Preliminary Injunction hearing with the trial on the merits. If the motion to consolidate is not raised in a party's opening brief, it will be considered waived.

An appendix outlining the trial procedures to be followed at the Preliminary Injunction hearing follows.

**APPENDIX**

**I.  TRIAL PROCEDURES**

**Counsel Tables**

Plaintiff will occupy counsel table next to the jury box. Defendant will occupy counsel table across from Plaintiff and, to the extent necessary, the pews in the gallery.

**Appearances**

Counsel will enter their appearance with the Court Reporter and the Courtroom Deputy Clerk before the start of the opening session of the hearing.

**Addresses By Counsel**

Counsel will address the Court in the following manner:

(a)     All addresses to the Court will be made from the lectern facing the Court.

(b)     Counsel shall stand when addressing the Court for any reason.

### Objections

Counsel will stand when making an objection and will make the objection directly and only to the Court.

When objecting, state only that you are objecting and the succinct legal basis for your objection. Objections shall not be used for the purpose of making speeches, repeating testimony, or to attempt to guide a witness.

Argument upon an objection will not be heard unless permission is given or argument is requested by the Court. Either counsel may request a bench conference.

### Decorum

Colloquy, or argument between counsel will not be permitted. All remarks shall be addressed to the Court.

Counsel shall maintain a professional and dignified atmosphere throughout the hearing.

During the hearing, counsel shall not exhibit familiarity with witnesses or opposing counsel and shall avoid the use of first names.

During opening statements and final arguments, all persons at counsel table shall remain seated and be respectful so as not to divert the attention of the Court.

Do not ask the Court Reporter to mark testimony. All requests for re-reading of questions or answers shall be addressed to the Court.

### Demonstrative Evidence

If any sketches, models, diagrams, or other demonstrative evidence of any kind will be used during the proceeding, they must be exhibited to opposing counsel two days prior to the hearing. Objections to the same must be submitted to the Court prior to the commencement of the hearing. Demonstrative evidence prepared solely for the purpose of final argument shall be

displayed to opposing counsel at the earliest possible time but in no event later than one-half hour before the commencement of the arguments.

Counsel must supply his/her own easel, flip charts, etc. for the hearing.

### Exhibits

Counsel will assemble and mark all exhibits and deliver them to the courtroom deputy prior to the commencement of the hearing. Plaintiff's exhibits will bear the letter prefix P followed by Arabic numerals and Defendant's exhibits will bear the prefix D followed by Arabic numerals.

Counsel should keep a list of all exhibits and should supply the Court, courtroom deputy and opposing counsel with a copy of the same.

Each counsel is responsible for any exhibits secured from the courtroom deputy. At the end of each hearing session, all exhibits shall be returned to the courtroom deputy.

The parties shall use three-ring tabbed notebooks for their exhibits which will be submitted two (2) days before the hearing. The parties shall provide one (1) copy of their tabbed exhibit notebook(s) to opposing counsel, and three (3) copies to the Court—one each for the Judge, the law clerk, and the courtroom deputy (for use at the witness stand).

Exhibits which are produced for the first time during the hearing, as in the case of exhibits used for impeachment, shall be tendered to the courtroom deputy for marking and then displayed to opposing counsel.

### Sanctions

The parties and counsel shall comply fully and literally with this pre-hearing order. The Court will consider the imposition of appropriate sanctions in the event of non-compliance, including monetary sanctions, the dismissal of claims or defenses, or the exclusion of evidence. Fed. R. Civ. P. 16(f).

**Questions**

This order supersedes all previous orders in this case to the extent previous orders are inconsistent with this order.

The parties shall address questions about this Order to the Court's Law Clerk, Diala Alqadi, at (614) 719-3276, by way of a telephone conference with counsel for all parties participating, or with fewer than all counsel participating with express permission of non-participating counsel. Or, the parties may contact Ms. Alqadi at diala_alqadi@ohsd.uscourts.gov, by way of email with counsel for all parties carbon-copied, or with fewer than all counsel carbon-copied with express permission of non-participating counsel.