# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AHWAR SULTAN, et al.,

      Plaintiffs,

    v.

DONALD J. TRUMP, et al.,

      Defendants.

Civil Action No. 25-1121 (TSC)

## PLAINTIFFS' MOTION FOR
## EXPEDITED PRODUCTION OF ADMINISTRATIVE RECORD

Rafael Urena, Esq. (NY: 5164058)
Phone: (703) 989-4424
Email: ru@urenaesq.com

Jana Al-Akhras, Esq. (OH: 0096726)
Phone: (929) 988-0912
Email: ja@urenaesq.com

**URENA & ASSOCIATES**
42 West St.
Floor R
Brooklyn, NY 11222
info@urenaesq.com
(888) 817-8599

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

LEGAL STANDARD............................................................................................3

ARGUMENT ........................................................................................................4

I.      Good Cause Exists for Expedited Discovery in Light of
        Plaintiff's Ongoing Irreparable Harm and the Court's TRO Findings ..............4

II.     The Requested Production Does Not Impinge on the Executive's
        Constitutional Prerogatives Nor Burden the Discharge of Official Duties........7

III.    Defendants' Persistent Evasiveness Justifies Immediate Discovery.................9

IV.     The Requested Discovery Is Narrowly Tailored to a Central
        Issue and Imposes Minimal Burden on Defendants  .......................................10

V.      Expedited Discovery Will Advance the Efficient
        of This Case on the Merits................................................................................13

CONCLUSION....................................................................................................15

CERTIFICATE OF SERVICE ...........................................................................17

# TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. Dep't of Lab.*, No. 1:25-cv-00339 (JDB) (D.D.C. Feb. 27, 2025) .................4

*Attkisson v. Holder*, 113 F. Supp. 3d 156 (D.D.C. 2015).................................4, 7

*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004)......................................7

*Church v. Biden*, 573 F. Supp. 3d 118 (D.D.C. 2021)......................................4, 7

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) .......................7, 10

*Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
234 F.R.D. 4 (D.D.C. 2006).........................................................4, 7, 9

*Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841 (D.D.C. 1996)....................3, 4

*Gomez v. Trump*, No. 20-cv-01419 (APM), 2020 U.S. Dist. LEXIS 261958
(D.D.C. Aug. 13, 2020)..............................................................9, 10

*Guttenberg v. Emery*, 26 F. Supp. 3d 88 (D.D.C. 2014) ..............................3, 4, 10

*Hussain v. Nicholson*, 435 F.3d 359 (D.C. Cir. 2006)........................................3

*In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142 (D.D.C. 2005)...............................10

*Mashatti v. Lyons*, No. 1:25-cv-1100-RJL (D.D.C. Apr. 17, 2025) ..................................13

*Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544 (D.C. Cir. 2015)...........................7

*Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Rsrv. Sys.*,
770 F. Supp. 2d 283 (D.D.C. 2011) ..................................................10

*New Mexico v. Musk,* No. 25-cv-429 (TSC),
2025 U.S. Dist. LEXIS 46424 (D.D.C. Mar. 12, 2025)................................4, 7

*Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982)..............................................3, 4

*Patel v. Lyons*, 1:25-cv-01096-ACR (D.D.C. Apr. 17, 2025) ...........................13

*Saleh v. Pompeo*, No. 17 CV 4574 (NGG) (CLP),
2018 U.S. Dist. LEXIS 247101 (E.D.N.Y. Aug. 8, 2018) .................................10

*Saleh v. Pompeo*, 393 F. Supp. 3d 172 (E.D.N.Y. 2019).................................10

*Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203 (D.C. Cir. 2020) .........................................3

*Wu v. Lyons*, No. 1:25-cv-01097-RBW (D.D.C. Apr. 17, 2025)........................................13

**Statutes and Rules**

Administrative Procedure Act (APA) ...................................................................1, 4, 7, 10

Fed. R. Civ. P. 26(d)(1) ...........................................................................................3, 10

Fed. R. Civ. P. 34(b)(2)(A)........................................................................................3, 10

**Other Authorities**

Memorandum Opinion, *Sultan v. Trump*, No. 25-cv-1121 (TSC)
(D.D.C. Apr. 24, 2025)..............................................................................................4, 9

TRO Hearing Transcript, *Sultan v. Trump*, No. 25-cv-1121 (TSC)
(D.D.C. Apr. 23, 2025)................................................................................................9

## **RULE 7(m) DISCLOSURE**

Pursuant to Local Rule 7(m), counsel for Plaintiff certifies that they have conferred with counsel for Defendants regarding this Motion for Expedited Discovery. Defendants' counsel stated that Defendants oppose the motion.

**PLAINTIFFS' MOTION FOR**
**EXPEDITED PRODUCTION OF ADMINISTRATIVE RECORD**

**INTRODUCTION**

Plaintiff Ahwar Sultan, by and through undersigned counsel, respectfully moves this Court for an order permitting expedited discovery narrowly tailored to obtaining the complete administrative record underlying (1) the termination of his Student and Exchange Visitor Information System ("SEVIS") record, and (2) any actions taken pursuant to or contemporaneously with that termination. Immediate, targeted discovery is necessary to prevent ongoing irreparable harm and to allow prompt and meaningful relief in this matter. Mr. Sultan currently faces urgent and compounding harms as a result of Defendants' actions, including: (1) imminent risk of removal from the United States; (2) loss of the opportunity to continue his education; (3) loss of current and future employment authorization; and (4) continued chilling of his First Amendment rights.

These injuries are not speculative—they have been recognized by this Court in granting a Temporary Restraining Order ("TRO") to restore Mr. Sultan's SEVIS status. Indeed, the Court has already found that Mr. Sultan "faces irreparable harm" and has shown a "likelihood of success" on the merits of at least his Administrative Procedure Act (APA) claim. Despite the TRO, Mr. Sultan remains in a precarious position: his visa stands revoked, his legal immigration status in the United States is still unknown, and he lives under the specter of possible prolonged detention or deportation at any time. Moreover, Defendants' abrupt termination of his student status — apparently in retaliation for his participation in protected political speech — has an ongoing chilling effect on his First Amendment freedoms, an injury which by itself is irreparable. Every day of uncertainty exacerbates these harms.

1

Expedited discovery is warranted to quickly uncover the full administrative record and basis for Defendants' actions, which is vital for the Court's evaluation of Plaintiff's claims and any further injunctive relief. The information sought is limited in scope and directly relevant to the core issues in this case—namely, whether Defendants had any lawful, non-retaliatory justification for terminating Mr. Sultan's SEVIS record and related actions. Early production of this record will enable Plaintiff to substantiate his claims (including his APA and constitutional claims) and allow the Court to proceed expeditiously to a final resolution on the merits or a preliminary injunction, as appropriate. Given that the Court has already determined that Plaintiff is likely to prevail on the merits of his challenge and that irreparable harm is ongoing time is of the essence. Plaintiff therefore seeks an order permitting immediate service of narrowly-tailored discovery and requiring Defendants to produce the requested materials on May 1, 2025, so that the current relief can be maintained and effective final relief can be secured. This request is reasonable, causes no unfair prejudice to Defendants, and is necessary to prevent grave harm.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party ordinarily may not seek discovery until after the Rule 26(f) scheduling conference, "except… when authorized by… court order." Fed. R. Civ. P. 26(d)(1). A court has broad discretion to alter the timing and sequence of discovery, and expedited discovery may be ordered in appropriate cases. *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207-08 (D.C. Cir. 2020) (citing *Hussain v. Nicholson*, 435 F.3d 359, 363-64 (D.C. Cir. 2006)). The Rules specifically contemplate that courts can adjust discovery timing to fit the needs of a case; for example, Rule 34 allows a court to shorten the 30-day time to respond to document requests. Expedited discovery is often "particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Ellsworth Assoc., Inc. v. United*

*States*, 917 F. Supp. 841, 844 (D.D.C. 1996).  In such situations, early discovery can ensure that the parties and the Court have the necessary information to address time-sensitive claims and prevent irreparable injury.

Because the Federal Rules do not prescribe a specific test for granting expedited discovery, courts have developed two general standards: one mirroring the preliminary injunction criteria (sometimes called the *Notaro* test), *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), and one focusing on the reasonableness of the request under the circumstances. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). The *Notaro* approach, requires the movant to demonstrate: (1) irreparable injury, (2) some probability of success on the merits, (3) a connection between the expedited discovery and the avoidance of the irreparable injury, and (4) that the harm to the movant outweighs the harm to the opposing party if expedited discovery is granted. *Id.* (citing *Notaro*, 95 F.R.D. at 405).  The alternative, and more commonly applied, standard is a general "good cause" or reasonableness test, under which courts assess whether the request is reasonable in light of all the circumstances. *Id.* at 98; *see also New Mexico v. Musk,* Civil Action No. 25-cv-429 (TSC), 2025 U.S. Dist. LEXIS 46424, at *6 (D.D.C. Mar. 12, 2025).

In the District of Columbia, courts favor the reasonableness test as better suited to the courts' broad discretion over discovery timing. *Guttenberg*, 26 F. Supp. 3d at 97-98; *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006); *AFL-CIO v. Dep't of Lab.,* No. 1:25-cv-00339 (JDB), slip op. at 4 (D.D.C. Feb. 27, 2025), ECF No. 48. Under this approach, courts consider a number of factors, including but not limited to:

1. Whether a preliminary injunction is pending;
2. The breadth of the discovery requests;
3. The purpose for requesting expedited discovery;
4. The burden on the defendants to comply; and
5. How far in advance of the typical discovery schedule the request is made.

3

These factors are not rigid requirements but guidelines to inform the Court's discretion. *See New Mexico v. Musk,* Civil Action No. 25-cv-429 (TSC), 2025 U.S. Dist. LEXIS 46424, at *6 (D.D.C. Mar. 12, 2025) (citing *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015). Ultimately, the inquiry is whether the moving party has shown good cause for the relief, meaning that the request is reasonable and necessary in light of the situation. Courts in this District have repeatedly permitted expedited discovery upon a showing of reasonableness and urgency, particularly where needed to preserve the status quo or to obtain information relevant to impending injunctive relief. For example, in *Ellsworth Assocs., Inc. v. United States*, the court noted that expedited discovery is appropriate when injunctions are sought due to the inherently time-sensitive nature of such proceedings. In all events, the moving party's burden is to show that the proposed discovery is narrowly tailored, reasonable, and necessary to avoid significant prejudice or harm. Plaintiff Sultan meets this standard, as discussed below.

## ARGUMENT

### I. Good Cause Exists for Expedited Discovery in Light of Plaintiff's Ongoing Irreparable Harm and the Court's TRO Findings

Expedited discovery is plainly justified here because Mr. Sultan's life and legal rights are in imminent jeopardy absent swift action. This Court is already familiar with the gravity of Plaintiff's situation, having granted a TRO upon finding that he is likely to succeed on the merits of his claims and that he faces irreparable harm without immediate relief. *Memorandum Opinion*, Sultan v. Trump, No. 25-cv-1121 (TSC), slip op. (D.D.C. Apr. 24, 2025), ECF No. 12. The TRO temporarily restored Mr. Sultan's SEVIS status and enjoined Defendants from taking further adverse action on the basis of his April 2024 protest arrest. *Id.* However, that relief is by its nature temporary and fragile. Mr. Sultan remains at risk that, without further intervention, Defendants could again strip away his student status, imprison him, and remove him from the country. He continues to suffer

practical and intangible injuries each day. As the Court observed, Mr. Sultan was left in a "catch-22 situation" where *"he [does not] know whether he should leave the United States… or risk being subject to removal proceedings"*, effectively forced to wait in "legal limbo" under threat of detention. TRO Hr'g Tr. at 7:22–25, *Sultan v. Trump*, No. 25-cv-1121 (TSC) (D.D.C. Apr. 23, 2025). Even with the SEVIS record reactivated by TRO, the uncertainty surrounding his immigration status and academic future is debilitating. Additionally, the chilling effect on his and others' exercise of free speech rights persists – the message has been sent that speaking out on certain political issues could result in severe consequences. The "loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."

In light of these circumstances, there is a direct and urgent connection between the discovery sought and the prevention of further irreparable harm. Plaintiff seeks information that goes to the heart of whether Defendants had a lawful basis for their actions or whether Mr. Sultan SEVIS termination and the actions therefrom were unlawful. Uncovering the complete administrative record of the SEVIS termination and the actions flowing from the termination will enable Plaintiff to confirm why his status was terminated, on what evidence or instructions, and the consequences of the termination. This is critical for determining what corrective relief is needed to protect him going forward. For instance, if the record (as the limited information so far suggests) shows that the termination was predicated solely on his dismissed arrest or the visa revocation was initiated on a false or unlawful pretext, that would underscore the illegality of Defendants' action and support making the TRO's relief broader and eventually permanent. Conversely, if there were any additional grounds or concurrent actions (such communications directing removal proceedings based on the unlawful termination), the Court and parties need to know that immediately to address those issues before they result in Mr. Sultan's detention, removal, or other irreparable

consequences. In short, expedited discovery here is tightly linked to preventing further harm and maintaining the status quo: it will ensure that Plaintiff is not blindsided by unknown adverse actions stemming from an action that this Court has found is likely unlawful and this Court can order the appropriate expanded injunctive relief before it is too late. This satisfies even the stricter *Notaro* standard's requirement of a clear connection between the discovery and avoiding irreparable injury. *Notaro*, 95 F.R.D. at 405. Because Mr. Sultan's harms – possible deportation, loss of education and work, and infringement of constitutional rights – are "certain and great, actual and not theoretical" and "of such imminence" as to demand immediate action, good cause exists to depart from normal discovery timing. *Church v. Biden,* 573 F. Supp. 3d 118, 138 (D.D.C. 2021) (quoting *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015)).

Moreover, a evidentiary hearings pursuant Plaintiffs' motion for temporary restraining order and a motion for preliminary injunction anticipated in this case imminently. The Court's April 25, 2025 Order directed the parties to propose further briefing and a hearing date within one day, reflecting the likelihood that further relief pursuant to Plainitffs' motion for temporary restraining order and Plaintiff's request for preliminary injunctive relief will soon be at issue. When injunctive relief is pending or contemplated, courts recognize that the need for a complete factual record is heightened and justifies expedited discovery. Indeed, "expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief" because the usual pace of litigation would frustrate the court's ability to grant meaningful relief in time. *Disability Rts. Council of Greater Wash.*, 234 F.R.D. at 6. Here, prompt discovery will allow Plaintiff to present the Court with the full administrative record and any related evidence at the preliminary injunction stage, rather than asking the Court to rely on incomplete information or speculation about Defendants' decision-making. *See Gomez v. Trump*, No. 20-cv-01419 (APM), 2020 U.S. Dist. LEXIS 261958 (D.D.C.

Aug. 13, 2020) (granting expedited discovery requiring immediate production of the administrative record related to the suspension of diversity visa processing, emphasizing that timely review was essential due to the imminent risk of irreparable harm from visa expirations). This will materially aid the Court in adjudicating the merits of Plaintiff's APA claim (which turns on the administrative record) as well as his First Amendment claim (which may be bolstered by evidence of retaliatory intent or unusual treatment revealed in the record). In sum, the first *reasonableness* factor – the pendency of injunctive proceedings – strongly supports granting expedited discovery. Plaintiff has demonstrated both a pressing need and a close nexus between the limited discovery sought and the avoidance of further irreparable harm, satisfying the good cause requirement.

## II.    The Requested Production Does Not Impinge on the Executive's Constitutional Prerogatives Nor Burden the Discharge of Official Duties

Plaintiff's request for expedited production of the administrative record does not interfere with the Executive Branch's constitutional functions or unduly burden agency officials, and stands in stark contrast to the expansive and intrusive discovery the Supreme Court cautioned against in *Cheney v. United States District Court for the District of Columbia,* 542 U.S. 367 (2004). In *Cheney*, the Court emphasized that discovery targeting the President's close advisors, particularly requests for information relating to core presidential decision-making, raises serious separation-of-powers concerns. *Id*. at 381–82. The Court underscored that judicial inquiries must not distract senior executive officials from their constitutional responsibilities or intrude upon the confidentiality necessary for the effective functioning of the Executive. *Id*. at 385.[1]

---

[1] In *Cheney*, the Supreme Court held that courts must be cautious when authorizing discovery that risks intruding on presidential functions, particularly when discovery targets deliberative processes or imposes burdens on high-ranking officials. Here, no such concerns are implicated because Plaintiff seeks only the administrative record relating to an agency action subject to routine judicial review.

Here, by contrast, Plaintiff merely seeks the production of the administrative record relating to the termination of his SEVIS record and any contemporaneous agency actions. This request is narrowly tailored to the ordinary review of administrative action under the APA, and implicates no privileged presidential communications, military decisions, or high-level executive deliberations. *See Citizens to Preserve Overton Park, Inc*, 401 U.S. at 420 (APA review must be based on the "full administrative record" before the agency). Unlike *Cheney*, no depositions, interrogatories, or invasive demands on the President or his senior advisors are at issue. The production sought here concerns standard agency documentation that must already exist, causing no constitutional friction.

Moreover, the burden on Defendants is minimal. The administrative record is integral to judicial review in APA cases and should already be compiled or readily accessible. Producing it now, rather than months later, will not disrupt agency functions and will prevent exacerbating the irreparable harms Plaintiff faces, including the risk of removal, loss of educational opportunities, and chilling of First Amendment rights.

Finally, any reliance by Defendants on *New Mexico v. Musk*, No. 25-cv-429, 2025 U.S. Dist. LEXIS 46424 (D.D.C. Mar. 12, 2025), stay granted sub nom. *In re Musk*, No. 25-5072 (D.C. Cir. Mar. 18, 2025) (granting stay and emphasizing that discovery directed at Executive Branch officials risks separation-of-powers violations), is misplaced. In *New Mexico*, the district court initially permitted limited expedited discovery against Executive Branch officials in a politically sensitive case involving agency leadership decisions. However, the D.C. Circuit subsequently stayed that order, recognizing that even limited discovery targeting *core* executive leadership decisions can impermissibly burden the Executive's constitutional functions. Here, by contrast, Plaintiff challenges a discrete agency action terminating a student's SEVIS record—an

administrative decision at the operational level, wholly unrelated to policymaking, political leadership, or structural reorganizations of the Executive Branch. The targeted administrative record sought here falls squarely within the permissible bounds of APA review and does not implicate the separation-of-powers concerns addressed in *Cheney*.

Nor would production of the administrative record chill legitimate Executive deliberations, as the requested documents concern completed agency action and the factual record supporting that action, not internal deliberative discussions insulated by privilege. Routine disclosure of the administrative record is an essential and constitutionally appropriate aspect of judicial review under the APA. Far from undermining the separation of powers, requiring the Executive to produce the administrative record merely ensures that courts can fulfill their constitutional duty to say what the law is and to guard against unlawful government action.

Accordingly, the requested expedited production respects the constitutional boundaries articulated in *Cheney*, imposes minimal burden on the Executive, and is necessary to permit meaningful judicial review while avoiding further irreparable harm to Plaintiff.

### III.    Defendants' Persistent Evasiveness Justifies Immediate Discovery

Defendants' lack of transparency, demonstrated in the Court's TRO Opinion and during oral arguments, highlights an urgent need for immediate discovery. As documented, defense counsel repeatedly failed to provide essential clarity regarding Mr. Sultan's status or intentions of the government to initiate removal proceedings. *Sultan*, slip op. at 7-9. At the TRO hearing, this Court expressed significant frustration, remarking, "How can I rule on this motion without that information? That's ridiculous" and emphasizing that Defendants placed Mr. Sultan in an "impossible situation" TRO Hr'g Tr. at 14:1–15, 16:1–2.

9

Such persistent evasiveness prevents meaningful judicial review and exacerbates the irreparable harm Mr. Sultan suffers daily. Immediate production of the administrative record and relevant materials would directly address this evasiveness by providing clarity on Defendants' basis for terminating Mr. Sultan's SEVIS record and subsequent actions.

## IV.    The Requested Discovery Is Narrowly Tailored to a Central Issue and Imposes Minimal Burden on Defendants

Plaintiff's request is exceedingly narrow in scope, targeting only the *administrative record of the agency action at issue* and closely related documents. Unlike a broad fishing expedition, Plaintiff does not seek open-ended discovery into every aspect of Defendants' conduct. He specifically seeks two closely circumscribed categories of information: (1) the *complete administrative record* underlying the decision to terminate his SEVIS record, and (2) any official records of actions taken *pursuant to or contemporaneously with that termination*. These materials would include, for example, the instructions or communications that led to Mr. Sultan's SEVIS record being marked terminated for "failure to maintain status – identified in criminal records check and/or visa revoked," any internal agency memoranda or emails concerning the decision, the notice or record of visa revocation referenced by the termination, and any alerts or follow-up actions (such as notices to ICE or DHS to initiate removal) triggered pursuant to that action. Each of these items directly pertains to the central question in this case: was the termination of Mr. Sultan's student status an authorized and lawfully supported act, or was it a unlawful, pretextual, or retaliatory measure unsupported by the agency's own rules and the facts? By constraining discovery to the administrative record and directly associated documents, Plaintiff ensures that the requests "avoid seeking information beyond the preliminary injunction phase or the merits of the claims" and are "narrowly tailored to relevant information." *Guttenberg,* 26 F. Supp. 3d at 98. This satisfies the second and third reasonableness factors, which emphasize that expedited discovery

should be limited to the necessities of the case and the purpose at hand. *Id.* Courts permit expedited discovery that is "narrowly tailored to reveal information related to the preliminary injunction" without allowing plaintiffs to "circumvent the normal litigation process." *Guttenberg*, 26 F. Supp. 3d at 98; *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005).Here, the purpose of the discovery is to compile the very record that will eventually have to be reviewed in adjudicating the APA claim, and to do so now rather than months later, given the urgent stakes. This purpose is legitimate and in fact routine in APA cases.

Notably, requiring Defendants to produce the administrative record early is not an extraordinary burden or unusual imposition. In APA litigation, the *government is ordinarily obligated to produce the full administrative record* that was before the agency at the time of the challenged decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (emphasizing that judicial review under the APA is to be based on "the full administrative record that was before the [agency] at the time he made his decision.") That record is the foundation for judicial review. Courts thus have the inherent authority to compel expedited production of an administrative record when circumstances warrant. Indeed, reviewing courts have ordered agencies to provide the administrative record on an expedited basis in numerous cases—especially where a plaintiff's rights could be irreparably harmed by delay. For example, in *Gomez*, 2020 U.S. Dist. LEXIS 261958, Judge Mehta ordered expedited production of the administrative record, recognizing that prompt access to the full administrative record is critical for meaningful judicial review of APA claims challenging governmental actions with immediate and severe impacts. *Id.*at 18 (ordering production in 5 days). In *Saleh v. Pompeo*, No. 17 CV 4574 (NGG) (CLP), 2018 U.S. Dist. LEXIS 247101 (E.D.N.Y. Aug. 8, 2018), the court directed the State Department to promptly produce the administrative record in a challenge to a passport revocation. *See also Saleh v.*

*Pompeo*, 393 F. Supp. 3d 172, 181 (E.D.N.Y. 2019) (adopting magistrate recommendation). Similarly, in *Nat'l Ass'n of Mortgage Brokers v. Bd. of Governors of the Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 288-89 (D.D.C. 2011), the court granted expedited discovery limited to the administrative record, emphasizing that APA review must rely solely on the full record before the agency at the time of its decision. Early production of the record is appropriate here for the same reasons: it will help Plaintiffs avoid succumbing to a significant threat of irreparable harm by allowing timely adjudication of the APA claims. There is no prejudice to Defendants in producing a record that they *should already have compiled* or be in the process of compiling. By contrast, waiting for the normal course of discovery (which, in an APA case, might mean waiting for Defendants to file an answer and then submit the record many months from now) would effectively deny Plaintiff meaningful relief. Every day that critical information is withheld is a day that Mr. Sultan's fate remains uncertain and his rights insecure. The balance of equities thus weighs heavily in favor of quick disclosure: the burden on Defendants is slight, whereas the harm to Plaintiff of withholding this key information is immense. Defendants cannot credibly claim unfair surprise or hardship in assembling the administrative record, as they were legally bound to consider that record when taking the action and will have to present it in this litigation regardless. Additionally, production of these documents does not intrude on privileged matters or broad areas of inquiry— it is confined to what the agency itself did and relied upon, which is a standard aspect of APA review.

Procedurally, Plaintiff proposes to effectuate this narrowly-tailored discovery by serving immediately a set of document requests under Rule 34, limited to the categories described above, and respectfully requests that the Court order Defendants to respond to and produce all responsive materials by May 1, 2025 of the Court's order (or by such date as the Court deems proper). The

Federal Rules expressly authorize the Court to shorten the usual time for discovery responses. See Fed. R. Civ. P. 34(b)(2)(A) (responses due in 30 days "*or* a shorter… time *ordered by the court*"). In light of the urgency and narrow scope of this request, the turnaround is reasonable. Courts have frequently ordered government defendants to produce administrative records or other documents on very short timeframes in cases involving immediate harms, including a few days when necessary. Given that Mr. Sultan's continued lawful presence and educational prospects may hinge on what the record reveals, a quick production is justified to avert irreparable harm. Defendants have the resources of all federal agencies at their disposal and presumably have already identified the universe of students (including Mr. Sultan) affected by the recent visa revocation initiative and SEVIS terminations. The specific records pertaining to Mr. Sultan should therefore be readily identifiable and producible. If any portion of the record legitimately requires slightly more time or raises privilege concerns, Defendants can so indicate to the Court; however, no such issues should prevent the bulk of the relevant documents from being produced within days. In sum, the requested discovery is proportional, focused, and minimally burdensome, satisfying the fourth and fifth factors of the reasonableness test. The slight burden on Defendants is far outweighed by the need to prevent irreparable harm and to allow this case to proceed efficiently.

## V.    Expedited Discovery Will Advance the Efficient Resolution of This Case on the Merits

Granting this motion will not only protect Plaintiff's rights in the interim but also serve the interests of judicial economy and the overall progress of the case. By obtaining the administrative record now, the parties and the Court can avoid unnecessary delay and potentially streamline the litigation. Early access to the key documents will enable Plaintiff to refine and support his claims (or, if the record were to reveal some lawful explanation, to narrow the issues accordingly), and enable the Court to evaluate the merits with full information at the earliest practicable time. This

is consistent with Rule 1 of the Federal Rules of Civil Procedure, which calls for the Rules to be employed to secure the "just, speedy, and inexpensive determination" of actions. Here, a prompt determination is essential given the stakes for Mr. Sultan. Expedited discovery of the record will set the stage for a consolidated hearing on preliminary relief and the merits, if appropriate, thereby potentially obviating the need for protracted discovery later. In fact, if the administrative record confirms that Defendants lacked a lawful basis for the SEVIS termination (as Plaintiff contends), it may be possible to resolve the APA claim on summary judgment or a consolidated merits hearing on a relatively quick timeline, given that APA cases are typically decided on the agency record. Conversely, if Defendants believe the record supports their actions, producing it now will allow them to make that case promptly. In either scenario, early disclosure of the core evidence benefits both parties and the Court by focusing the dispute and enabling informed decision-making.

Furthermore, this Court's TRO Order anticipated the need for swift further proceedings by requiring a DHS representative to appear and clarify Mr. Sultan's status and Defendants' intentions. That provision underscores that the Court does not want to proceed in the dark or tolerate ambiguity regarding what has happened to Mr. Sultan. Expediting discovery of the record aligns with that concern by bringing all relevant facts to light. It is also worth noting that Plaintiff Sultan's situation is part of a broader pattern affecting many international students. Several other courts have issued TROs in similar cases challenging mass SEVIS terminations. An expeditious handling of discovery and adjudication in this case will have significance beyond the parties, sending a clear message on the legality of the government's actions. Thus, the public interest and the interest of other affected persons also favor prompt discovery and resolution. As the Court recognized, "the public interest [is] in preserving the status quo and preventing irreparable harm"

while the merits are adjudicated. Mem. Op. at 6. Accelerating discovery to facilitate a faster merits adjudication is in line with that public interest.

In sum, all relevant factors favor granting Plaintiff's motion. A preliminary injunction is either pending or imminent; the discovery sought is narrowly focused on the decisive issue in the case; the purpose is to prevent irreparable harm and illumine the merits, not to burden Defendants; the burden on Defendants is minimal and mainly involves doing now what would have to be done later; and the request is made urgently, well in advance of the normal schedule, due to the extraordinary risks faced by Plaintiff. Plaintiff has demonstrated good cause and reasonableness for this request. Under either the *Notaro* test or the general balancing test, expedited discovery is warranted. The relief sought here is equitable, modest, and necessary to preserve the Court's ability to accord full and effective justice in this matter. Plaintiff therefore respectfully urges the Court to grant this motion.

## CONCLUSION

For the foregoing reasons, Plaintiff Ahwar Sultan respectfully requests that the Court GRANT this Motion for Expedited Discovery. Specifically, Plaintiff asks that the Court, pursuant to Federal Rules of Civil Procedure 26(d)(1) and 34(b)(2)(A), **authorize immediate discovery and order Defendants to produce, on or before May 1, 2025, the complete administrative record underlying the termination of Mr. Sultan's SEVIS record and the administrative records of any actions taken pursuant to or contemporaneous with that termination.** This production should include all documents and materials considered by or before the relevant agencies in connection with the decision to terminate Plaintiff's SEVIS status, as well as any records of communications or directives issued in conjunction with that termination (such as notice of visa revocation, instructions regarding removal proceedings, or related policy memoranda).

Plaintiff further requests that the Court award any additional relief it deems just and proper to ensure that the expedited discovery is effective in preventing irreparable harm and facilitating a prompt resolution of this case on the merits.

Dated: Brooklyn, New York
      April 26, 2025

Respectfully submitted,


/s/ *Rafael Urena*
Rafael Urena, Esq. (NY: 5164058)
Phone: (703) 989-4424
Email: ru@urenaesq.com

Jana Al-Akhras, Esq. (OH: 0096726)
Phone: (929) 988-0912
Email: ja@urenaesq.com

**URENA & ASSOCIATES**
42 West St. Suite 136
Brooklyn, NY 11222
info@urenaesq.com / (888) 817-8599
*Counsel for Plaintiffs*

\\

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to all attorneys of record.

Dated: April 26, 2025

/s/ Rafael Urena
Rafael Urena, Esq.