**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AHWAR SULTAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | Civil Action No. 25-1121 (TSC) |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR EXPEDITED PRODUCTION OF ADMINISTRATIVE RECORD**


Rafael Urena, Esq. (NY: 5164058)
Phone: (703) 989-4424
Email: ru@urenaesq.com

Jana Al-Akhras, Esq. (OH: 0096726)
Phone: (929) 988-0912
Email: ja@urenaesq.com

**URENA & ASSOCIATES**
42 West St.
Floor R
Brooklyn, NY 11222
info@urenaesq.com
(888) 817-8599

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

I. VISA REVOCATION AND SEVIS TERMINATION WERE ONE COORDINATED ACTION ....................................................................................2

II. EXPEDITED PRODUCTION IS WARRANTED GIVEN URGENCY AND ONGOING IRREPARABLE HARM ........................................................3

III. OTHER COURTS' RULINGS CONFIRM THE NEED FOR PROMPT AND FULL RELIEF ..............................................................................................6

IV. DEFENDANTS' RELIANCE ON 8 U.S.C. § 1201(i) IS MISPLACED ............8

CONCLUSION......................................................................................................................11

CERTIFICATE OF SERVICE ..............................................................................................13

## TABLE OF AUTHORITIES

### CASES

*Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7 (D.D.C. 2001) .........2, 3

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) .............................2

*James Madison Ltd. v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996)..........................................2

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ..............5

*Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188 (D.D.C. 2006). .............................................2

*Mashatti v. Lyons*, No. 1:25-cv-1100-RJL (D.D.C. Apr. 17, 2025) ................................6, 7

*Patel v. Lyons*, No. 1:25-cv-01096-ACR (D.D.C. Apr. 17, 2025). ..........................3, 6, 7, 9

*Saavedra Bruno v. Albright*, 197 F.3d 1153 (D.C. Cir. 1999).............................................9

*United States v. Ruiz,* 536 U.S. 622 (2002).........................................................................10

### STATUTES

8 U.S.C. § 1201(i) ......................................................................................... passim

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR EXPEDITED PRODUCTION OF ADMINISTRATIVE RECORD**

Plaintiff Ahwar Sultan, by and through undersigned counsel, respectfully submits this Reply in support of his Motion for Expedited Production of the Administrative Record and in opposition to Defendants' Response (ECF No. 17). For the reasons below and those stated in Plaintiff's motion, the Court should grant expedited production of the complete administrative record.

## INTRODUCTION

Defendants' opposition confirms that expedited production of the full administrative record is both necessary and appropriate. Defendants concede they can quickly produce the record, but attempt to withhold or delay key portions of the record – notably, records of the State Department's visa revocation – by contending that the visa and SEVIS actions are separate and that 8 U.S.C. § 1201(i) bars this Court from even examining the visa revocation. This artificial distinction cannot withstand scrutiny. Courts in this District and the D.C. Circuit have firmly established that the administrative record must include *all* materials influencing an agency decision. As the facts and recent court proceedings demonstrate, the visa revocation and SEVIS termination were two halves of a single, coordinated government action targeting Plaintiff. Multiple courts (including this one) have already recognized the extraordinary nature of this joint agency operation – executed without notice or individualized review – and have granted swift injunctive relief and ordered prompt record production in similar cases. *See* Ex. A, DHS/DOS April 2, 2025 Email (email evidencing the government's single coordinated effort to simultaneously revoke visas and terminate SEVIS records). Plaintiff continues to suffer ongoing irreparable harm each day his status remains in limbo. Expedited production of the complete administrative record, from both DHS and the State

Department, is critical to enable effective judicial review on Plaintiff's forthcoming preliminary injunction and to prevent further prejudice.

## I. VISA REVOCATION AND SEVIS TERMINATION WERE ONE COORDINATED ACTION

Under the Administrative Procedure Act (APA), judicial review of agency decisions must be based upon the "whole record" before the agency at the time of the decision. *Aee James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1095 (D.C. Cir. 1996) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971)) (holding APA review includes "all materials 'compiled' by the agency at the time the decision was made"). Defendants must produce the complete administrative record, including documents they considered indirectly or chose not to rely upon explicitly. *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (compiling cases) (stating that an agency "may not exclude information simply because it did not rely on that information in its final decision"). Administrative records must include materials from multiple entities if involved in decision making. *Amfac Resorts, L.L.C. v. U.S. Dep't of* Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (compiling cases) ("[A] complete administrative record should include all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision.... [I]f the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well." (internal citations omitted))

Applying this rule, Defendants' evidence, and related proceedings confirm that visa revocation and SEVIS termination were not independent actions but rather a single, coordinated government effort. *See Patel v. Lyons*, No. 1:25-cv-01096-ACR, Hr'g Tr. 4:1–16:2 (D.D.C. Apr. 29, 2025) (explaining coordination and decision making pursuant to DOS recommendations); *see also* Ex. A, DHS/DOS April 2, 2025 Email. During the April 29, 2025 hearing in *Patel v. Lyons*,

Judge Reyes explicitly confirmed State Department coordination with DHS: once visas were revoked, the State Department instructed DHS to terminate SEVIS records. DHS conducted no individualized review; instead, it terminated student status based solely on a State Department directive. Hr'g Tr. 4:1–16:2, *Patel v. Lyons*, No. 1:25-cv-01096-ACR (D.D.C. Apr. 29, 2025) ("Court: [E]ven though they were still in status and validly here…the State Department sent them back to you and told you to terminate them in SEVIS?" Mr. Walker (Government Counsel): Yes.")

Judge Reyes further confirmed the absence of notice or individualized due process. Thousands of students, including Plaintiff Sultan, were terminated without meaningful review. Plaintiff's SEVIS termination explicitly linked the basis of the visa revocation to status termination. Given the unified nature of these actions, Defendants must produce the complete administrative record, including both State Department and DHS documentation. *Amfac Resorts, L.L.C.*, 143 F. Supp. 2d at 12 (compiling cases) (holding that if the agency's decision was informed by or relied upon the work and recommendations of other officials, those documents must also be part of the administrative record).

This Court previously questioned the government's candor concerning these intertwined actions. During the TRO proceedings, counsel was unable to clarify Plaintiff's immigration status, confirm the revocation of Plaintiff's visa, or articulate a basic legal justification for the government's actions. *See* Hr'g Tr. 13:13–15:25, *Sultan v. Trump*, No. 25-1121 (D.D.C. Apr. 23, 2025). Such intentional ambiguity emphasizes the need for the complete administrative record to ascertain the legitimacy and rationale behind Defendants' coordinated actions.

## II. EXPEDITED PRODUCTION IS WARRANTED GIVEN URGENCY AND ONGOING IRREPARABLE HARM

Time is of the essence. Plaintiff's preliminary injunction briefing is underway on an accelerated schedule, and each day of delay in producing the record prejudices Plaintiff's ability to fully

present his case and obtain effective relief. Defendants propose waiting until May 16, 2025 to file the incomplete SEVIS record (with their opposition brief), but that timeline is too slow and one-sided. Under Defendants' proposal, Plaintiff would receive the administrative record only at the same moment Defendants file their opposition to injunctive relief – leaving no meaningful opportunity for Plaintiff to review the record, identify any deficiencies or supportive evidence within it, or incorporate it into his reply brief and arguments. Especially in a case of this nature, where the lawfulness of the government's actions have been resoundingly rejected and candidness of the government rightfully questioned by courts across the country, Plaintiff should not be ambushed with the record at the 11th hour. Expedited production of the whole record in advance of the opposition (or a rolling production of portions of the record) will ensure a fair process, allowing the Court to have all relevant materials before it when considering the preliminary injunction.

Furthermore, Plaintiff continues to suffer ongoing irreparable harm during this period of uncertainty. Although this Court's April 24, 2025 TRO temporarily reinstated Plaintiff's SEVIS status (preventing SEVIS reinstatement from the U.S.), Mr. Sultan remains in a precarious position. He has lost the critical stability and security of his lawful F-1 status. The SEVIS termination—even if temporarily halted—exposes him to the immediate threat of arrest and detention. Plaintiff risks being suddenly taken into ICE custody, transported to distant immigration detention facilities plagued by allegations of mistreatment, and isolated from meaningful access to his attorneys. These imminent and severe harms constitute irreparable injury, which cannot be remedied later through monetary compensation or retrospective relief. Obviously, Plaintiff experiences extreme distress and uncertainty regarding his immigration situation. He has been explicitly warned by U.S. officials that he may have no lawful status – the U.S. Consulate in

Mumbai emailed him on April 21, 2025, stating that "remaining in the United States without lawful immigration status can result in fines, detention, and/or deportation" Email from U.S. Consulate General Mumbai to Ahwar Sultan (Apr. 21, 2024), *in* Pls.' Reply Supp. TRO, Ex. B, *Sultan v. Trump*, No. 1:25-cv-01121-TSC (D.D.C. Apr. 22, 2025), ECF No. 9. Even when pressed by this Court regarding Plaintiff's immigration status, Defendants' counsel remained conspicuously silent. *See* Hr'g Tr. 13:13–14:5, *Sultan v. Trump*, No. 25-1121 (D.D.C. Apr. 23, 2025) ("I have asked that question of Immigration and Customs Enforcement as to how they would consider that determination as to whether or not an individual is failing to maintain their lawful nonimmigrant status, and I have not received a response.") Thus, every day that passes, Plaintiff faces the terrifying prospect that he is one bureaucratic update away from being considered deportable. Even with the TRO in place, the cloud of uncertainty hampers his ability to make life decisions (such as continuing his research, registering for future classes, or traveling to visit family abroad, which he now cannot do with a revoked visa). Unwarranted immigration actions causing loss of lawful status and authorization to work constitute irreparable harm. Here, Plaintiff's risk of accruing unlawful presence and facing the violence inherent in detention and deportation is not hypothetical—it is precisely the outcome Defendants intended through their unlawful actions, and it remains a looming threat absent further court intervention.

Against this backdrop of ongoing harm, Defendants cannot credibly claim that expediting the record would prejudice them in any legitimate way. The government has been aware of Plaintiff's claims since at least mid-April when this suit and TRO were filed. Indeed, in the *Patel* case, the government was able to compile and file a certified SEVIS record in a matter of days (by April 28, 2025 when ordered to do so. *See Patel v. Lyons*, No. 1:25-cv-01096-ACR, ECF No. 11 (D.D.C. Apr. 28, 2025) (ordering the government to compile and file a certified SEVIS record within days).

The same should be feasible here, especially since the universe of relevant documents (communications between State and DHS, the "Delta" initiative spreadsheets, internal memos, etc.) is likely very similar across all these parallel cases. Defendants have already had to gather these materials in responding to other lawsuits; expediting production for Mr. Sultan simply ensures the Court and the parties have the whole record available here, in a timely fashion. In short, the balance of equities weighs heavily in favor of speed: Plaintiff is suffering continuing irreparable harm, whereas Defendants face, at most, the burden of producing documents a few weeks earlier than their preferred schedule – a minimal burden given the circumstances.

## III. OTHER COURTS' RULINGS CONFIRM THE NEED FOR PROMPT AND FULL RELIEF

Plaintiff's request for expedited record production is further bolstered by the string of recent temporary restraining orders and injunctions issued in virtually identical cases around the country. Courts have repeatedly recognized that the government's tandem visa revocation/SEVIS termination campaign raises serious legal questions and causes severe harm warranting immediate judicial intervention. For example, on April 17, 2025, Judge Richard J. Leon granted a TRO in *Mashatti v. Lyons*, explicitly noting the troubling lack of clarity (and candor) from the government about the effect of its actions. *Mashatti v. Lyons*, No. 1:25-cv-1100-RJL, slip op. at 4 n.2 (D.D.C. Apr. 17, 2025). In *Mashatti*, the plaintiff argued that termination of his SEVIS record effectively rendered him unlawfully present; at the TRO hearing, "defense counsel, curiously, was unable to explain to the Court whether [the] plaintiff's continued presence is unlawful", thus failing to rebut the plaintiff's showing. *Id*. Judge Leon found the government's "obfuscation" on this point *"telling"* and concluded that it "favors a TRO, as the Court is inclined to maintain the status quo pending further investigation of the merits." *Id*. In other words, the court would not permit the agencies to keep a student in legal limbo without a full airing of the underlying record and

justifications. The TRO restored the student's status and implicitly required the government to come forward with the bases for its actions on an expedited timeline.

Likewise, in *Patel v. Lyons*, No. 25-1096 (D.D.C.), Judge Reyes entered a TRO on April 17, 2025 barring the enforcement of Mr. Patel's status termination, then promptly convened a preliminary injunction hearing where she demanded production of the administrative record and grilled the government on the coordination between State and DHS. Hr'g Tr. 4:1–16:2, *Patel v. Lyons*, No. 1:25-cv-01096-ACR (D.D.C. Apr. 29, 2025) ([E]ven though they were still in status and validly here…the State Department sent them back to you and told you to terminate them in SEVIS?"). And in *Hinge v. Lyons*, No. 1:25-cv-01097-RBW (D.D.C. Apr. 15, 2025), Judge Walton issued a TRO for another F-1 student, similarly recognizing the imminent harm and likely invalidity of the abrupt termination. Indeed, as Plaintiff noted in his TRO briefing, by late April "courts in this District and others" had enjoined Defendants' mass SEVIS terminations in case after case. Pls.' Reply Supp. TRO at 1, *Sultan v. Trump*, No. 1:25-cv-01121-TSC (D.D.C. Apr. 22, 2025), ECF No. 9 (collecting cases). This Court has now joined that consensus by granting Sultan's TRO in part.

Crucially, these courts have also insisted on expedited disclosure of information and records in light of the government's opaque process. In *Patel*, for instance, the court ordered the government to file the administrative record on an expedited basis . *Patel v. Lyons*, No. 1:25-cv-01096-ACR, Minute Order (D.D.C. Apr. 24, 2025) (ordering Defendants to provide communications expeditiously); Minute Order (D.D.C. Apr. 25, 2025) (rdirective for expedited filing of the administrative record). And this Court, in granting Sultan's TRO, ordered Defendants to designate a knowledgeable official to appear at the next hearing who can speak authoritatively for DHS/ICE, Hr'g Tr. 15:12–15:21, *Sultan v. Trump*, No. 1:25-cv-01121-TSC (D.D.C. Apr. 23,

2025) ("[T]his court is demanding an answer to that question. And if they don't want to give you an answer, I would like an official from DHS or ICE to appear at our next hearing to answer that question or file a written declaration."),—a clear response to the government's failure to provide straight answers about the record and the plaintiff's status. *See id.* at 14:1–14:5 ("I have asked that question of Immigration and Customs Enforcement as to how they would consider that determination...and I have not received a response."). The overarching message from these TRO rulings is that courts will not tolerate stonewalling or delay when fundamental rights and lawful status are at stake. They expect the government to promptly produce the full factual record of how these decisions were made. Plaintiff Sultan asks this Court to do no more than what its sister courts have deemed necessary and just: require an accelerated production of the complete administrative record so that the forthcoming preliminary injunction proceedings can be based on a fully informed, reliable evidentiary foundation.

Courts have repeatedly recognized that unjustified immigration actions causing the loss of lawful status and employment authorization constitute irreparable harm. Expedited production ensures an equitable, informed resolution of Plaintiff's preliminary injunction motion.

## IV. DEFENDANTS' RELIANCE ON 8 U.S.C. § 1201(i) IS MISPLACED

In opposing full record production, Defendants argue that any documents related to the Department of State's visa revocation are off-limits because 8 U.S.C. § 1201(i) bars judicial review of visa revocations. This argument is a red herring. Plaintiff is not asking the Court to "review" the consular visa revocation in isolation as if it were a standalone agency action – rather, he challenges the combined, coordinated course of conduct by which Defendants terminated his SEVIS status and stripped him of his ability to remain in the United States. The State Department's role is an integral part of that course of conduct. Section 1201(i) does not give the government a

license to conceal relevant evidence or silo off one component of a unified scheme simply to avoid scrutiny.

To be sure, § 1201(i) provides that a consular officer "may at any time, in his discretion, revoke" a visa and that there shall be no judicial review of such a revocation *except* in removal proceedings. Courts (including the D.C. Circuit in *Saavedra Bruno v. Albright*) have read this provision to generally preclude lawsuits that seek direct rescission of a visa revocation. 197 F.3d 1153, 1159–60 (D.C. Cir. 1999). But Plaintiff's primary goal is to restore and preserve his F-1 student status (which this Court has already partially done via TRO) and to challenge the unlawful process that led to its termination. While the visa revocation is inextricably intertwined with that process and with Plaintiff's claims (including his First Amendment retaliation claim and APA claims), the review of the record is not pursuant challenge to the review of a denial of an entry visa to a foreign alien. It is pursuant to the review of the SEVIS termination because Defendants themselves treated the visa revocation and status termination as one package – as evidenced by the communications and emails linking the two, and by the fact that State actively prompted DHS to terminate Plaintiff's status. *See* Hr'g Tr. 4:1–16:2, *Patel v. Lyons*, No. 1:25-cv-01096-ACR (D.D.C. Apr. 29, 2025); Ex. A, DHS/DOS April 2, 2025 Email. Having orchestrated a joint operation where each agency's actions depended upon the other's decisions, Defendants cannot now claim that the visa revocation is irrelevant to this Court's review of the DHS action.

Importantly, nothing in § 1201(i) prevents this Court from considering evidence of the visa revocation and its reasons as part of the backdrop for the SEVIS termination. Here, the visa revocation provided the primary impetus and justification for DHS's action to terminate status. The Court has jurisdiction to determine its own jurisdiction, which includes the authority to ascertain whether Plaintiff's claims are properly before it and on what factual basis. *United States*

*v. Ruiz*, 536 U.S. 622, 628 (2002) ("[A] federal court always has jurisdiction to determine its own jurisdiction.") Requiring Defendants to lodge the complete administrative record – including interagency communications and State Department materials – does not mean the Court is prematurely "exercising jurisdiction" over a visa claim; it means the Court is gathering the information needed to evaluate the claims (APA, due process, First Amendment) undeniably within its jurisdiction. At minimum, the record may show whether DHS's termination decision was arbitrary and capricious or contrary to law because it blindly followed a State Department directive that itself was unconstitutional or ultra vires. The Court is entitled to know if ICE officials had any independent rationale for terminating Mr. Sultan's status, or if they were simply carrying out an impermissible edict from State or the White House (as suggested by the Executive Order and campaign statements noted in the Complaint. If the latter, that could influence the Court's analysis of Plaintiff's likelihood of success on his APA and constitutional claims.

Finally, the April 21, 2025 email from the U.S. Consulate in Mumbai highlights the fallacy in Defendants' attempt to sever the visa revocation from the SEVIS termination. In that message – which Plaintiff received after his visa was revoked – the State Department explicitly warned him that he was essentially out of status: "remaining in the United States without lawful immigration status can result in fines, detention, and/or deportation." *See* Ex. A, DHS/DOS April 2, 2025 Email. This official notice to Plaintiff underscores that, from the government's own perspective, the visa revocation did have the intended effect of nullifying his lawful presence (indeed, it prompted the SEVIS termination that accomplished that result). The Mumbai consulate did not tell Plaintiff, "Don't worry, your status in the U.S. is unaffected." It told him the opposite – to leave or face consequences – directly contradicting Defendants' litigation position that *"a visa revocation does not itself terminate ... status."* Declaration of Andre Watson at 5, *Sultan v. Trump*, No. 1:25-cv-

01121-TSC (D.D.C. Apr. 22, 2025), ECF No. 8-1 ("Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States.") In short, the government cannot have it both ways: it cannot use the visa revocation as a sword to cut down Plaintiff's status, then wield § 1201(i) as a shield to prevent this Court (and Plaintiff) from examining that sword's blade. Equity and common sense demand that the full record of this joint agency action be produced and examined together. Anything less would allow form to triumph over substance and would risk obscuring the true motives and legality of Defendants' conduct.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for Expedited Production of the Administrative Record. Specifically, Plaintiff asks the Court to order Defendants to produce the complete administrative record forthwith (and no later than May 5, 2025, or such earlier date as the Court deems just). This record should include all materials considered by any and all Defendant agency in connection with the revocation of Plaintiff's visa and the termination of his SEVIS status, including interagency communications and directives. Expedited production will ensure that the Court can adjudicate Plaintiff's forthcoming preliminary injunction motion with the benefit of a full and candid record of the decision-making process at issue. Given the coordinated nature of the actions taken against Plaintiff, and the severe ongoing harms he faces, such relief is not only appropriate but necessary to allow for a fair and prompt resolution of Plaintiff's claims on the merits. The Court should reject Defendants' attempts to delay and compartmentalize the record, and instead require the complete, expedited disclosure that the whole record rule and justice demands.

Dated: May 1, 2025
Brooklyn, NY

Respectfully submitted,

*/s/ Rafael Urena*
Rafael Urena, Esq. (NY: 5164058)
Phone: (703) 989-4424
Email: ru@urenaesq.com

Jana Al-Akhras, Esq. (OH: 0096726)
Phone: (929) 988-0912
Email: ja@urenaesq.com

**URENA & ASSOCIATES**
42 West St. Suite 136
Brooklyn, NY 11222
info@urenaesq.com / (888) 817-8599

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to all attorneys of record.

Dated: May 1, 2025

*/s/ Rafael Urena*
Rafael Urena, Esq.